IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CRYSTAL POWER COMPANY LTD. and LA CASA CASTRO S.A. DE C.V., | § § § § | |
| Plaintiffs, | § § | |
| versus | § § | CIVIL ACTION NO. G-10-40 |
| INKIA SALVADORIAN POWER LIMITED, NEJAPA HOLDING COMPANY LIMITED; NEJAPA POWER COMPANY, LLC; COMPANIA DE ENERGIA DE CENTROAMERICA S.A. DE C.V.; GREENBERG TRAURIG P.A.; BANCO AGRICOLA S.A.; BANCO HSBC SALVADORENO, S.A.; and BANCO G&T CONTINENTAL EL SALVADOR, | § § § § § § § § § § § § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Before the Court, by referral from the Honorable Kenneth M. Hoyt, United States District Judge, is the "Motion to Remand, and in the Alternative, Motion to Compel Arbitration, Dismiss and Remand, and Motion to Sever and Remand" of Plaintiffs Crystal Power Ltd. ("Crystal Power") and La Casa Castro S.A. de C.V. ("LCC"). *See* Docket Entry No. 9. The Court, having considered the Motion, the submissions of the parties, the pleadings, and the applicable law, now submits this Report and Recommendation to the District Court.

I. Background

This case originated in February 2008, when the 23rd Judicial District Court, Brazoria County, Texas, issued an order of severance in cause number 46341. A related case, from which this action was severed, remains pending in state court. On November 10, 2009, Plaintiffs filed

their Second Amended Petition in cause number 46341, in which Compania de Energia de Centroamerica S.A. de C.V. ("Cenergica") was named as a defendant. *See* Docket Entry No. 9, at Exh. A. In this petition, Plaintiffs asserted various claims against Cenergica for alleged concerted conduct with other defendants in operation of the Nejapa power project in El Salvador. *See id.* On December 18, 2009, Plaintiffs filed their First Supplemental Petition and Application for Temporary Injunction against defendants Coastal Salvadoran Power, Ltd. ("CSP"), Coastal Nejapa, Ltd. ("NEJAPA"), and Cenergica. *See id.*, at Exh. B. In that pleading, Plaintiffs sought a mandatory injunction based upon their alleged proprietary right as the minority-interest owner in the investment agreement, requiring: (1) CSP and NEJAPA to cause NEJAPA to hold monthly board meetings pursuant to an investment agreement with Plaintiffs; and (2) Cenergica to cause NEJAPA to hold monthly board meetings as referenced in a December 28, 1994, Services Agreement between Plaintiff LCC and Coastal Technology Salvador (a predecessor-in-name of Cenergica) (the "Services Agreement"). *See id.*, at Exh. C.

On January 4, 2010, Plaintiffs settled all claims asserted against Defendants El Paso CGP Company, L.L.C. ("CGP") and El Paso Corporation ("El Paso") in cause number 46341. The settlement funds have been deposited in the registry of the state court.

On January 5, 2010, the state court held a hearing on Plaintiffs' Application for Temporary Injunction as against CSP and NEJAPA. Thereafter, the state court entered an order denying Plaintiffs' Application for Temporary Injunction.

On January 15, 2010, Plaintiffs served Cenergica with Plaintiffs' Second Amended Petition. Plaintiffs maintain that their First Supplemental Petition and Application for Temporary Injunction was never served upon Cenergica. Cenergica made a general appearance by filing its

answer on February 5, 2010.  *See* Docket Entry No. 9, at Exh. D.  Cenergica did not assert any counterclaims against either Plaintiff.  *See id.*

Thereafter, on February 9, 2010, Cenergica removed this case from state court, asserting that this Court has original jurisdiction over Plaintiffs' claims against Defendants under 9 U.S.C. § 203 because these claims relate to an international arbitration agreement that falls under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").  Cenergica contends that Plaintiffs have asserted claims directly based on the Services Agreement—which contains an international arbitration agreement—and additional claims that relate to and directly reference the Services Agreement.  Thus, according to Cenergica, this Court has original subject matter jurisdiction as well as supplemental jurisdiction over the claims in this case.

At some point, through discovery, Plaintiffs obtained written letters and agreements from Defendants CGP and El Paso that appeared to modify the original obligations that Cenergica owed Plaintiffs under the terms of the Services Agreements.  *See* Docket Entry No. 10.  Plaintiffs contend that these letters and agreements may have provided Cenergica with unchallengeable defenses to Plaintiffs' claims.  *See id.*

Thus, on March 10, 2010, Plaintiffs filed, concurrently, the pending motion to remand and a motion to dismiss, with prejudice, their claims against Defendant Cenergica.  *See* Docket Entry Nos. 9, 10.  Defendants filed a notice of non-opposition to the dismissal of Cenergica.  *See* Docket Entry No. 16. Consequently, Plaintiffs' claims against Cenergica were dismissed on June 8, 2010. *See* Docket Entry Nos. 25, 26.  Defendants, however, oppose Plaintiffs' motion to remand and, instead, seek an order compelling arbitration.  *See* Docket Entry Nos. 13, 15, 17.  Plaintiffs

counter that this Court is without jurisdiction to consider Defendants' motion to compel arbitration. *See* Docket Entry No. 23.

## II. Analysis

### A. Standard

In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before judgment, it determines that it lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). When the jurisdiction of the court is challenged, the party seeking to invoke federal jurisdiction has the burden of establishing the existence of subject matter jurisdiction. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "The federal removal statute . . . is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); *see* 28 U.S.C. § 1441.

### B. Original Jurisdiction

In its removal, Cenergica's asserted basis for the federal question jurisdiction is the Convention, 9 U.S.C. §§ 203 and 205. *See* Docket Entry No. 1. Section 203 provides:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203. Section 205 provides:

> Where the subject matter of an action or proceeding pending in a State court **relates to** an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceedings to the district court of the United States for the district and division

> embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205 (emphasis added).

"Section 205 does not explicitly define when an action 'relates to' an arbitration agreement falling under the Convention." *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 377 (5th Cir. 2006). Federal courts, however, have recognized "broad jurisdiction over Convention Act cases in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention." In this regard, the Fifth Circuit has found that an arbitration agreement "relates to" the subject matter of the lawsuit if the agreement could conceivably affect the outcome of the case:

> [W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense.

*Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002). To emphasize the low jurisdictional threshold, the Fifth Circuit further noted:

> As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

*Id.*

In their motion to remand, Plaintiffs contend that no claims asserted against Cenergica in their Second Amended Petition arise out of, or are in connection with, or related to the Services Agreement. *See* Docket Entry No. 9. Contrary to Plaintiffs' contentions, the subject matter of

5

this lawsuit has a connection with the Services Agreement, which includes an arbitration agreement falling under the Convention. The various implementing agreements significantly overlap to govern the rights and/or obligations of the parties in this case. Although only Cenergica and LCC executed the Services Agreement, it impacts the rights of several nonsignatories. Under the Services Agreement, LCC is to provide services for the benefit of NPC. This includes the possibility of attending and participating in board meetings. *See* Docket Entry No. 15, at Exh. E. By way of letter dated December 28, 1994, it was agreed that the cost of LCC attending any Nejapa Holding board meetings would be billed to NPC as a project cost. *See* Docket Entry No. 15, at Exhs. E, H.

In an attempt to evade the interrelated nature of the agreements, throughout the Second Amended Petition, the Plaintiffs use the undefined term "investment agreement" to refer to the multiple agreements that Plaintiffs contend constitute the agreement between the various parties related to the project. The interwoven nature of the agreements, however, is apparent from Plaintiffs' Second Amended Petition:

> On or about December 28, 1994, a Services Agreement, Operation and Maintenance Agreement, Administrative Services Agreement, and Fuel Supply Agreement were executed, among a variety of other documents, for the provision of various operations and services for the Nejapa power project. The Services Agreement provided compensation to LCC for certain services related to the project. The Operation and Maintenance Agreement, Administrative Services Agreement, and Fuel Supply Agreement provided compensation to Defendants, or their subsidiaries, for various operations and services related to the project. In accordance with the **investment agreement**, these operation and services agreements were for a term of 10 years. By renewing the Operation and Maintenance Agreement, Administrative Services Agreement, and/or Fuel Supply Agreement beyond the 10-year term contemplated by the parties without also renewing the LCC Services Agreement with like terms, the CSP, NPC, NEJAPA, CGP, and/or EL PASO Defendants breached the **investment agreement**. As a result of this breach, Plaintiffs have been damaged (1) the value of the Services Contract for the

6

>period the renewed Operation and Maintenance Agreement, Administrative Services Agreement, and/or Fuel Supply Agreement have been implemented for the benefit of Defendants or their affiliates and (2) the value of the renewed Operation and Maintenance Agreement, Administrative Services Agreement, and/or Fuel Supply Agreement profits, bonus, and penalty terms that are in excess of industry practices for labor and fuel purchases, and the fuel charges recited in the CEL agreement as a base line for maximum fuel prices.  Plaintiffs have been damaged in excess of the minimum jurisdictional limits of this Court.

*See* Docket Entry No. 9, at Exh. A, at ¶ 21 (emphasis added).  Additionally, as set forth in Plaintiffs' First Supplemental Petition, the Plaintiffs have asserted claims against Cenergica and Inkia based directly on the Services Agreement:

>The December 28, 1994 Services Agreement, which was between LCC and CENERGICA, provided for two LCC Executives to participate in monthly board meetings.  The Services Agreement states:
>
>> . . . It is anticipated that Coastal Nejapa board meetings will be held monthly, each month alternative between Houston and San Salvador.  For Houston Board meetings, the time billed by La Casa Castro executives shall include actual time in the meeting plus eight hours of travel.  The billing will also include expenses.
>
> \* \* \*
>
>. . . . Both Defendant CSP and CENERGICA are obligated to cause NEJAPA to hold monthly board meetings with the location alternating between San Salvador and Houston, with the expenses incurred by LCC's directors to attend the meetings to be borne by and reimbursed by NEJAPA.
>
> \* \* \*
>
>Plaintiffs ask the Court to Order Defendants to cause NEJAPA to hold monthly board meetings alternating between San Salvador and Houston, with the expenses incurred by Plaintiffs' two Directors for attending said meetings to be reimbursed by NEJAPA.

Docket Entry No. 15, at Exh. K, at ¶¶ 9, 14, 21.

As set forth above, it is patently obvious that the Plaintiffs' claims "relate to" the Services Agreement, which contains an international arbitration agreement, that "falls under" the Convention. *See id*.

Moreover, the Services Agreement clearly "falls under" the Convention. An agreement falls under the Convention when:

> (1) there is a written agreement to arbitrate the dispute; (2) the agreement provides for arbitration in a territory of a signatory to the Convention; (3) the agreement arises out of a commercial legal relationship; and (4) the agreement is not solely between citizens of the United States.

*See* 9 U.S.C. § 202; *Sedco, Inc. v. Petroles Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144-45 (5th Cir. 1985); *Roser v. Belle of New Orleans, L.L.C.*, No. Civ. A. 03-1248, 2003 WL 22174282, at *3 (E.D. La. Sept. 12, 2003). In the case at bar, the Services Agreement meets each of these elements. It is in writing; it contains an express arbitration clause; it is between parties in a commercial relationship; it provides for arbitration in a signatory nation; and Cenergica, a party to the Services Agreement, is not an American citizen, it is an El Salvadoran corporation. *See* Docket Entry No. 15, at Exhs. A, B, and E. Consequently, the arbitration agreement in the Services Agreement falls under the Convention.

Finally, lending support to the conclusion that Plaintiffs' claims are subject to federal question jurisdiction under the Convention are both the broad scope of the Convention's removal provision and the policy favoring a uniform body of federal law interpreting agreements under the Convention. Thus, based on federal question jurisdiction under the Convention and removal jurisdiction under § 1441(c), the Defendants properly removed this case to federal court.

### III. Conclusion

It is, therefore, the **RECOMMENDATION** of this Court that the Plaintiffs' Motion to Remand, and in the Alternative, Motion to Compel Arbitration, Dismiss and Remand, and Motion to Sever and Remand (Docket Entry No. 9) be **DENIED**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who shall have until **October 1, 2010**, to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553. Failure to file written objections with the prescribed time **SHALL** bar any Party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____10th_____ day of September, 2010.

John R. Froeschner
United States Magistrate Judge